

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 8, 2019

**BY ECF**

Honorable William H. Pauley
United States District Judge
Southern District of New York
500 Pearl Street – Room 1920
New York, New York 10007

    Re:    <u>United States v. Deshaun Gregory</u>, 18 Cr. 315 (WHP)

Dear Judge Pauley:

    The Government respectfully submits this letter in connection with the sentencing of the defendant, Deshaun Gregory, scheduled for February 15, 2019 at 3:00 p.m., and in response to the defendant's sentencing memorandum, dated February 1, 2019 ("Def.'s Mem."). For the reasons stated below, the Government submits that a sentence within the applicable Guidelines Range of 77 to 96 months' imprisonment (the "Guidelines Range") as calculated in the Presentence Investigation Report (the "PSR") would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **A.  Offense Conduct**

    On March 8, 2018, police officers from the New York City Police Department (the "Officers"), while on patrol in Bronx County, observed the defendant engaged in a conversation with another male. (PSR ¶ 7). At the time, the Officers knew that that there was an active arrest warrant for the defendant, and that he was wanted in connection with a separate investigation into an assault. (PSR¶ 6). The Officers, who were familiar with the defendant based on prior interactions with him, approached the defendant and placed him under arrest based on the warrant. During a search incident to the arrest, the Officers found a .40 caliber semiautomatic pistol in the defendant's jacket pocket. (PSR¶ 10). The Officers learned from a search of the defendant's criminal history that he had been previously convicted in Bronx County Supreme Court of reckless endangerment in the first degree, in violation of New York State Penal Law section 120.25 on February 9, 2016. (PSR ¶ 12).

    After receiving and waiving his <u>Miranda</u> rights, the defendant made statements to the police admitting that the gun was his and that he had purchased the firearm from a friend in exchange for $300.00. (PSR ¶ 11.) The defendant reported that he was carrying the firearm for protection because he had previously been the victim of a shooting.

### B. Procedural History

On April 5, 2018, the defendant was charged by complaint with violating Title 18, United States Code, Section 922(g)(1). (ECF No. 1). The defendant was taken into federal custody on April 19, 2018, presented before Magistrate Judge Henry B. Pitman, and detained on consent. (ECF No. 5). On May 1, 2018, the defendant was indicted by a grand jury and charged with the same offense as outlined in the complaint. On June 20, 2018, the defendant pleaded guilty to the single count Indictment pursuant to a Pimentel letter, dated May 22, 2018. (ECF No. 7). At the time of his guilty plea, the Government calculated the applicable Guidelines range as 46 to 57 months' imprisonment, based on a total offense level 17 and a criminal history category V.

The Probation Office calculates a criminal history category of VI and a total offense level of 21, resulting in an advisory Guidelines range of 77 to 96 months' imprisonment. (PSR p. 24). The Probation Office recommends a sentence of 84 months' imprisonment, in part, because this is the defendant's thirteenth conviction, not including a pending criminal case where the defendant is charged with slashing the victim with a razor after the victim attempted to intervene in a physical altercation the defendant was having with his girlfriend. (Id.) The PSR also cites the numerous other arrests where the defendant was accused of committing acts of violence. (Id.)

Although the defendant does not object to the Probation Department's sentencing calculations, the defendant requests that the Court impose a sentence below both the Guidelines range as calculated by the Probation Department. The defense argues that a sentence of 46 months' imprisonment followed by a term of supervised release that would include mental health and substance abuse treatment, is appropriate. (Def.'s Mem at 6).

### C. Discussion

#### 1. Applicable Law

The Guidelines still provide important guidance to the Court following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Indeed, although Booker held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). See Gall, 552 U.S. at 50 & n.6.

Hon. William H. Pauley  Page 3
February 8, 2019

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2. A Guidelines Sentence Is Appropriate In This Case

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant, to promote respect for the law, and to protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). These considerations weigh in favor of a sentence within the Guidelines Range.

*First*, a within-Guidelines sentence is necessary to provide both specific and general deterrence. It is clear that the defendant's previous array of convictions and sentences did not deter him from committing additional crimes. The defendant has an extensive criminal history dating back to 1996. (PSR ¶ 27). Over the course of his thirty six years, the defendant has spent over ten years in prison or juvenile facilities, and by his own admission has no history of legitimate employment. (Def.'s Mem., Ex A p. 2). The defendant's criminal history makes clear that throughout his adult life and extending back into adolescence, the defendant's primary, if not only, source of income has been through the sale of narcotics. Despite these arrests, the defendant was not deterred from continuing to violate the law, including by obtaining a firearm. A within-Guidelines sentence will hopefully accomplish what the defendant's prior encounters with the criminal justice system have failed to – i.e., deter him from future crimes of this magnitude, and send a clear signal to others in the community that repeated violations of the law culminating in a crime that poses a serious danger to others will not be taken lightly.

As to general deterrence, a sentence above the Guidelines range would send a message to other felons who would consider possessing firearms or ammunition—or even worse, using firearms—that such conduct carries very serious consequences.

*Second*, and relatedly, a within-Guidelines sentence is necessary to protect the public from further crimes by the defendant. Perhaps most troubling is the defendant's history of violent and aggressive behavior. He has been arrested for at least six violent felony offenses, including the slashing of an individual who attempted to intervene in a physical altercation between the defendant and his girlfriend. The defendant slashed the victim with a razor across the head, face, and arms causing severe lacerations that required hospitalization. In addition to his criminal

conduct, the defendant has been involved in over a dozen domestic incidents which have involved the use of violence. While some of these incidents have resulted in the defendant's arrest, others went unaddressed in the criminal courts.

While the circumstances of the defendant's upbringing, as detailed in his sentencing submission, are distressing, they should not overshadow the interests of those impacted by his actions, or the public at large.

*Third*, a within-Guidelines sentence is necessary to reflect the seriousness of the defendant's conduct, to promote respect for the law, and to provide just punishment. The instant case marks the defendant's thirteenth conviction. (PSR p. 24). His prior convictions include, among others, firearms possession, assault, and narcotics distribution. (PSR ¶¶ 31, 33, 35, 37, 41, 49, and 51). These convictions shed light on the defendant's history and characteristics—as do several violent incidents that did not produce convictions. The defendant has arrests (which, again, did not result in convictions) for, inter alia, narcotics possession, possession of a loaded firearm, assault, and strangulation. (PSR ¶¶ 66, 68 72, 74). The defendant's heedless actions in purchasing a loaded firearm created grave risk of harm to anyone who might incur his wrath. This is especially important in a case where, as here, the defendant has a long history of violent behavior, including domestic violence. As the Supreme Court has noted, "[f]irearms and domestic strife are a potentially deadly combination." United States v. Hayes, 555 U.S. 415, 427 (2009). Section 922(g)(8) exists because, as Congress found, "[t]here have been far, far too many dreadful cases in which innocent people . . . [are] wounded or killed by a former boyfriend or girlfriend, partner, or other intimate using a gun—despite the fact that the attacker was subject to a restraining order."). United States v. Mahin, 668 F.3d 119, 124 (4th Cir. 2012) .

Finally, the defense has raised certain considerations it argues are relevant to the Court's consideration under 18 U.S.C. 3553(a). These include the defendant's difficult childhood, the death of his father, grandmother, and the defendant's mental health issues.[1] While these considerations highlight additional and important dimensions of the defendant's life, they are not mitigating factors that warrant a below Guidelines sentence. Neither the defendant's mental health issues nor the circumstances of his upbringing change the fundamental fact that, he has been and continues to be, a significant public danger. Simply put, there is nothing in the defendant's background that suggests that he is capable of conforming his conduct to the norms and standards of society.

### D. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of between 77 and 96 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

---

[1] The defense does not contend that there are any concerns about competence.

Hon. William H. Pauley  Page 5
February 8, 2019

                                     Respectfully submitted,

                                     GEOFFREY S. BERMAN
                                     United States Attorney for the
                                     Southern District of New York

By: _____
                                     Dominic A. Gentile
                                     Assistant United States Attorney
                                     (212) 637-2567

cc:    Jonathan Marvinny, Esq. (by ECF)